# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

Lisa Gustafson Feis, pro se
Julien Feis, pro se

                            Plaintiffs,

    v.

Dr. Keith Mayo
Swedish First Hill
Dr. Christopher Boone
Proliance Orthopaedics & Sports Medicine

                         Defendants,

**CASE NO.** 2:23-cv-00462-MLP

**MARCH 26, 2023**

**COMPLAINT FOR DECLARATORY RELIEF AND DEMAND FOR JURY**

**RCW 7.70.010**
**RCW 7.70.050**

## PARTIES

1. Plaintiffs, Lisa Gustafson Feis, ("Ms. Feis"), and Julien Feis ("Mr. Feis"), are adult individuals, who at the times relevant were residing in Pierce County Washington.

2. Mr. and Mrs. Feis reside in Lynchburg, Ohio.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 1 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

3. The Plaintiffs relocated to Ohio in 2021 to obtain specialized medical care at the Cleveland Clinic, #2 ranked hospital globally in order for them to accurately diagnose and treat the medical conditions caused by the Defendants as described below.

4. Mr. and Mrs. Feis jointly bring this action for declaratory, injunctive, and monetary relief pursuant to RCW 7.70.010 and RCW 7.70.050.

5. The Defendants named in this complaint:

a) All had established a written physician/patient relationship, and all were considered "healthcare providers" per RCW 7.7.020.

b) They breached their Fiduciary duties, were negligent, reckless, and deviated from the accepted standard of medical care.

c) They failed to properly diagnose, they disregarded prior proper diagnoses and imaging, they provided improper treatment, they failed to warn Ms. Feis of known risks, and both performed incorrect surgeries that have resulted in multiple invasive surgeries to Ms. Feis' spine that would never have been needed, had these two named surgeons not made the life-altering errors that they made.

d) These errors have caused several years of intense pain that required a large amount of opioids, a ketamine nasal spray and other medications.

e) The pain, even after a correct surgery in December 2022 still requires Suboxone, the Ketamine nasal spray, a muscle relaxer, a high dose of Gabapentin and other medications for pain, anxiety, and depression.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 2 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

f) They caused crippling and debilitating injuries, embarrassment from having to use a walker and having a malfunctioning bladder (either incontinence or pain and the need to push, which over time would lead to other issues such as a bladder prolapse), constant pain, isolation, emotional pain, and suffering.

g) Ms. Feis has pain and trouble in her shoulders and knees and was seen for this, and it was stated it was from overuse because she had to use a walker, and put most weight on the right side where there was pain, but it was not as great as on the left.

e) This pain and suffering were so significant that in 2021, Ms. Feis felt hopeless, and she asked Mr. Feis to take her to Oregon for legal Dr. assisted suicide. This is documented in Ms. Feis' medical records.

f) The negligence and recklessness of the Defendants caused significant financial damages and permanent injury to Ms. Feis.

d) Their actions also directly caused Mr. Feis to suffer incomprehensible mental anguish, loss of consortium, including being afraid to touch Ms. Feis out of fear of injuring her, having to help her through bouts of tears and frustration, while battling his own frustration and helplessness.

e) The injuries caused by Dr. Mayo when he incorrectly removed the sacrum hardware ended the sexual and intimate relationship between the parties January 2019 when Ms. Feis began falling, she was bedridden, could no longer drive, and she became isolated to their bedroom and bathroom.

f) This has left both parties lonely, deprived of human touch and companionship

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 3 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

with each other and friends and family as they were unable to travel.

g) From 2019 – 2021, the only outings were to go to the doctor's visits, and there were very few rare times when on the way to or from, the Feis' would try to go out to dinner, but they had to take a special cushion for Ms. Feis to sit on, and halfway through meals, Ms. Feis' pain would increase to the point that the food had to be packed to go.

h) March 8, 2021, the Feis' spent their 10-year wedding anniversary with Ms. Feis eating in bed, crying because she was in pain from trying to cook, and Mr. Feis was at the dining room table since his wife had gone to so much trouble. Many events, births of grandchildren, death of grandparents and milestone birthdays were missed during this time period.

i) Both Mr. and Ms. Feis have parents in Germany that have significant health issues, but they have been unable to travel to see them.

j) Ms. Feis' father was appointed a legal guardian as she was unable to help coordinate his medical care, and he has been hospitalized several times since 2017.

h) The Feis' were isolated and alone long before Covid-19 required everyone to isolate themselves. The effects of continued isolation are known. It increases anxiety and depression, it causes frustration, loneliness, and hopelessness.

f) After the 2021 spine surgery, a hospital bed was in the Feis' living room until they moved. Raised toilet seats, a shower seat, shower grab bar and safety equipment had to be installed and assistive devices had to be purchased. The Feis home was like a nursing home with a 47 and 59 year old resident.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 4 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

g) The medications Ms. Feis required at times were over $500, and at times Mr. Feis spent his work day driving to get prescriptions, waiting at pharmacies for approvals, and he is the only one that drove Ms. Feis to each and every doctor's appointment, surgery, he picked up all prescriptions and food for them and took care of Ms. Feis 2 ESA dogs.

h) Mr. Feis also suffered financial damages, using every day of his paid time off, vacation and sick leave, and he had to take unpaid leave at times when he ran out of paid leave, or he had to work weekends to make up the lost time.

i) Mr. Feis risked losing his job when he told his employer he had to work remotely to care for Ms. Feis in January 2019.

j) Mr. Feis carried most of the responsibility to move them across the Country, and a RV was purchased so that Ms. Feis could lay down during the trip.

k) Mr. Feis suffered the loss of his companion, his wife, his help with household and garden chores, a six-figure income contribution to the household, and he gained a patient. He has been a caregiver since 2018.

6.  All statements made in this complaint can be substantiated and can be proven by the Preponderance of Evidence per the requirements set forth in RCW 7.7.0.030.

## **JURISDICTION**

7.  This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the Plaintiffs are now citizens of a different State as each of

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 5 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

the Defendants, and the amount at stake is more than $75,000.

## **VENUE**

8. The venue is correct because:

9. At the time of the incidents alleged in this complaint, the Plaintiffs were residents of Pierce County, Washington.

10. Ms. Feis was in the care of Dr. Keith Mayo at Swedish First Hill, in King County Washington at the time of the incidents alleged in this complaint.

11. Ms. Feis was in the care of Kenda Bulley, ARNP at Swedish First Hill, in King County Washington at the time of the incidents alleged in this complaint.

12. Kenda Bulley, ARNP was acting as a delegate of Dr. Mayo, and he should be held liable for her conduct as Respondent Superior. Kenda Bulley, ARNP, treated Ms. Feis when Dr. Mayo was not available at Swedish First Hill, a corporation located in King County Washington.

13. Swedish First Hill is a corporation located in King County Washington and should be held liable as the Respondent Superior for Dr. Keith Mayo and Kenda Bulley.

14. Ms. Feis was in the care of Dr. Christopher Boone, Dr. Ashit Patel (not a Defendant) and Dr. James Bruckner (not a Defendant) at the Issaquah, Redmond and Bellevue facilities, which are all located in King County Washington at the time of the incidents alleged in this complaint. From October 2018 through August 2,2021

15. Proliance Orthopaedics & Sports Medicine is a corporation located in King County Washington and should be held liable as the Respondent Superior.

16. Ms. Feis engaged with attorney Jennifer Cannon-Unione, and she hired a forensic

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 6 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

nurse to conduct a review of the records of Ms. Feis' care through 2/10/2021.

17. The nurse has marked her work as protected attorney work product, so it will not be attached as an exhibit at this time, but she stated that "No amount of legal restitution can reclaim one's health, particularly to the degree that it appears Lisa has been harmed. My initial impression is that there exists merit and the damages are proximal to the negligence on the part of Dr. Keith Mayo and perhaps Proliance as the Respondent Superior for the acts and omissions of its employee in the health care services of Lisa."

18. The nurse clearly states the errors in her analysis and references records provided that demonstrate the negligence and harm that was done.

## **BACKGROUND**

19. On June 5, 2016, Ms. Feis sustained severe spine and pelvis injuries as the result of a motor vehicle vs. pedestrian accident, while visiting in the State of New York.

20. Ms. Feis suffered a right hip fracture, a severe pubis ramis fracture, a significant sacrum fracture located in the top right corner of the sacrum, fractures to L5, L4 and L2, a head injury, and several crush injuries. The sacrum fracture becomes the main focus of this action with regards to both physicians that are named.

21. On the pain index severity scale pelvis injuries rank as some of the highest possible.

22. After being struck by the motor vehicle, Ms. Feis was transferred to the University of Vermont Medical Center, the nearest Level 1 Trauma facility, where Dr. Craig Bartlett performed a 10.5-hour surgery to stabilize the pelvic ring.

23. A long wire was placed across the front of the pelvis and was bolted into each pelvic

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 7 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

bone. This was the "infixator."

24. Two long screws were placed across the fracture in the sacrum. These are the focus of this claim with regards to Dr. Mayo and his removal of them without proper preparation, and their removal led to a chain of events, additional malpractice by Dr. Boone, and several unnecessary, invasive surgeries as outlined below.

25. This surgery was performed via an approximately 1 cm incision, and there were no incisions or surgeries performed on Ms. Feis' spine. Now Ms. Feis has a 6" incision running up her spine, she has mostly large hardware as a sacrum and L5.

26. The spine fractures healed on their own and never caused issues as can be demonstrated via the medical records from this time period.

27. Ms. Feis was told while hospitalized at UVT for several weeks that the front "infixator" hardware would need to be removed once the bones had healed, and it would become painful. It did, and Ms. Feis knew when it was time for removal.

28. Ms. Feis was advised not to ever remove the two screws that held the fracture at the top of the sacrum together, and she was told they would not ever cause issues, but would offer stabilization, which they did until they were removed.

29. Ms. Feis was a resident of Washington when this accident took place, and as soon as she was stable enough to be transported home by Mr. Feis, she was transferred to the care of Dr. Sagi, an orthopedic traumatologist at Harborview Medical Center located in downtown Seattle.

30. October 25, 2016, Dr. Sagi removed the front infixator, after asking Ms. Feis at her pre-OP appointment one month prior to her surgery to obtain the OP report from

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 8 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

the University of Vermont.

31. Dr. Sagi told Ms. Feis that specialized equipment was used to insert the hardware, and he needed the report sent to him in advance so that he would know what instruments to use to remove the "infixator".

32. Dr. Sagi sent the hardware home with Ms. Feis per her request, and it is still in her possession.

33. Ms. Feis, had been in intense physical therapy, including aqua therapy, transitioning from zero weightbearing and wheelchair dependent to using a walker with arm braces to support her weight so that no weight was on the left leg, then to using a regular walker.

34. This caused muscle irritation and cramping in her back, legs and feet that were no longer accustomed to bearing weight.

35. During the pre-OP appointment, specifically the removal of the screws in the sacrum was discussed with Dr. Sagi.

36. Ms. Feis specifically asked him to remove the sacrum hardware when he removed the "infixator" since he intended to access the same, small surgical site where the hardware had been inserted, and it would mean only one surgery would be needed.

37. Dr. Sagi stated that the sacrum hardware should never be removed, it was in so deep that it would never be felt, and if anything, he also said that the screws offered additional stabilization.

38. Dr. Sagi stated the pain that Ms. Feis was experiencing was from muscles unaccustomed to being used, and this proved to be true. He specifically called the

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 9 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

hardware "non-symptomatic".

39. Dr Sagi stated otherwise when called by a potential attorney for Ms. Feis in 2021 and said he would have removed it too. If he would have, he had the opportunity to when he removed the front infixator, and he did not.

40. October 25, 2016, the front "infixator" was removed without any complications, and Dr. Sagi told Ms. Feis during their meeting in the pre-OP area that he had a call with Dr. Bartlett earlier in the week to review the images and the OP report.

41. Ms. Feis was discharged after a few hours as planned, and she was able to work from home remotely in her bed the next day (Tuesday) and resumed working onsite the following week on Monday.

42. Nowhere in any chart notes from 2016 until she was released from Dr. Sagi's care on December 4, 2017, with a normal heel-toe gait and strength, with no restrictions to return to the office or ski, is spine pain or any spine issue mentioned.

43. The focus was always on the pelvis becoming stable enough for Ms. Feis to bear full weight on it.

44. Ms. Feis worked September 2016 – December 2017 in various roles, one at home so she could go to physical therapy several times a week.

45. Mr. and Mrs. Feis bought a large, 2-story home September 2017, and Ms. Feis was able to move furniture and boxes, refinish furniture and post pictures of her work on her social media accounts without any issues.

46. September 2017, Mr., and Mrs. Feis traveled to Texas and visited children and grandchildren, and they took one of their small grandsons to Iowa to visit

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 10 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

grandparents. Ms. Feis had no issues lifting any of the grandchildren or anything.

47. November 2017, Mr., and Mrs. Feis traveled to Germany for almost a month, during which Ms. Feis walked a lot while shopping and doing other things.

48. Ms. Feis never used any assistive device to walk after October 2018, when she was discharged from physical therapy, and was featured in the ProClub newsletter as an aqua therapy success story. During the photo shoot for this article, Ms. Feis was able to wear heels, as her footing and gait were stable, and she was strong.

49. Ms. Feis returned to work onsite full-time as a Microsoft/HCL contractor February 14, 2018, at the request of her previous manager.

50. The scope of work was changed so that Ms. Feis would no longer be required to take the 6-month mandatory break contractors must take at Microsoft after 18 months. Ms. Feis was put into a Managed Services statement of work so that she could work indefinitely.

51. Her salary was $111,000 per year. She had fully paid medical and dental benefits, 15 days of PTO plus paid holidays, life, short- and long-term disability insurance (partially company paid, partially employee paid), and a dollar-to-dollar 401k match of 4% which she was contributing the maximum amount to.

52. The annual benefits package value equaled approximately 20% of Ms. Feis' salary in addition to her earnings.

53. She worked transporting prototypes on carts between buildings, moved shelving in and out of storage and had no issues walking around the large Microsoft campus.

54. Ms. Feis was being tapered off of all pain medications, and was on the last step,

with the final stop being planned for after her return from China.

55. April 2018, a 10-year, multi-entry visa to China was obtained via HCL and Microsoft for Ms. Feis to be able to travel to Microsoft builds on a regular basis, for extended period of time.

56. This was not a short contract, but a full-time role with HCL as a resource assigned to Microsoft indefinitely.

57. Ms. Feis loved her job, her boss, her colleagues and traveling to the factories.

58. May 2018, Ms. Feis traveled alone, with her luggage through Taipei, to China for a production build as a Microsoft/HCL contractor.

59. During the day, the build required a significant amount of walking on the factory campus, at lunch all colleagues walked together and, in the evening, and on the weekends Ms. Feis and her colleagues walked and went shopping, took a train to Shanghai and went sightseeing for 12 hours, then took the train back to Suzhou.

60. Ms. Feis and her colleagues wore step tracking bands and were walking 16,000+ steps per day without any issues, while Ms. Feis was also carrying a backpack with her computer and an external monitor, or shopping bags.

61. Ms. Feis' colleagues, friends and family later wrote letters of support regarding her high level of activity and function for her disability claim, which was denied solely on the carrier claiming pre-existing without doing a proper investigation.

62. On May 28, 2018, Ms. Feis was sent home from the factory, accompanied by a colleague in a taxi, physically ill from pain in her hip.

63. She missed a planned event that evening, and in the early morning, she awoke in

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 12 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

agonizing pain and was unable to return to the factory. This was documented by a coworker who emailed the Marriott Hotel and asked them to check in on her.

64. When Ms. Feis returned from China, she scheduled the first available appointment with Dr. Sagi to address the pain. She was allowed to work from home during this time as needed.

65. June 18, 2018, Dr. Sagi saw Ms. Feis and suspected a labral tear of the left hip due to the symptoms. He ordered an arthrogram, and informed Ms. Feis that it was his last day in the clinic, but he would call her with the results and help her find a new caregiver. He was moving to Cincinnati, Ohio.

66. Late June, Ms. Feis had to start using a walker and wheelchair to ambulate again.

67. July 28, 2018, the arthrogram ordered by Dr. Sagi confirmed a 1 cm. labral tear with full cartilage loss.

68. Dr. Sagi called and left a voice mail for Ms. Feis confirming the labral tear, and recommending she see Dr. Cara Beth Lee at Swedish First Hill because the injury required a surgical repair.

69. Ms. Feis attempted to schedule an appointment with Dr. Lee and was told her records needed to be sent by Harborview, and the first available appointment would be in October.

70. Ms. Feis sent the request to Harborview to send the records to Swedish.

71. July 31, 2018, trying to be treated as soon as possible, Ms. Feis saw Dr. Downer (not named as a Defendant), Proliance Seattle based on a recommendation from a physical therapist. He had also been sent the records from Harborview in advance.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 13 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

72. He incorrectly determined she was not eligible for arthroscopic surgery.

73. He had clearly not reviewed the images, because he never diagnosed or mentioned the femoral impingement. This visit was the first documented doctor's visit after the arthrogram confirming the labral tear.

74. Ms. Feis had (on the left), and still has (on the right) extra bone on the femur that is a birth defect present in Ms. Feis' pelvis. It pounded on the labrum and cartilage until it shredded.

75. The only way to fix this was exactly what Dr. Sagi stated in his voice mail, and what Ms. Feis' physical therapist noted, and that was that it required a surgical repair. Dr. Downer and Dr. Mayo stating that getting in a pool to get conditioned would fix the issue is entirely incorrect. The more Ms. Feis used the hip, the more it ripped out the labrum and cartilage.

76. This would be diagnosed October 2019, and repaired November 7, 2019, arthroscopically in a short surgery by Dr. James Bruckner at the Proliance Issaquah surgical facility.

77. When Mr. and Ms. Feis were shown the image during the first visit with Dr. Bruckner, the extra bone was visible to the naked eye, even as a non-expert.

## **FACTS DR. KEITH MAYO – SWEDISH**
## **DEVIATION FROM STANDARD OF CARE**

78. The statute of limitations varies by case and incident, but this motion is being filed in a timely manner based on Ms. Feis having requested Mediation per with Dr. Mayo and Swedish September 1, 2021, per RCW 7.70.110.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

79. And, with the last date of established care having been terminated in writing on April 30, 2019, via fax, and 05/01/2019 via certified mail.

80. This letter outlined the negligence and misdiagnosis made by Dr. Mayo more than once, and it canceled an appointment scheduled for May 14, 2019, after Ms. Feis was again seriously misdiagnosed March 26, 2019.

81. Dr. Keith Mayo, Defendant, was the Director of the Seattle Swedish Hip and Pelvis center, which was part of the Seattle Swedish First Hill campus at the time of the deviations from the standard of care.

82. The Swedish Hip and Pelvis Center is now closed per the Swedish website, and Dr. Mayo appears to be practicing at the Seattle Swedish First Hill Campus at the time of the filing of this lawsuit.

83. Kenda Bulley, ARNP, Defendant, worked for Dr. Mayo as his licensed ARNP, and acted in his place on several occasions when the deviations from the standard of care outlined in this complaint occurred. She also appears to still be affiliated with Seattle Swedish First Hill per the Swedish website.

84. Both were, and are orthopedic specialists, falling into the category of "health care provider" per RCW 7.70.020.

85. Swedish First Hill is named in this lawsuit as Respondent Superior, also falling into the category of "health care provider" per RCW 7.70.020.

86. Ms. Feis called Swedish in July 2018, per the recommendation of Dr. Sagi to schedule the appointment with Dr. Cara Beth Lee for a surgical repair of her torn

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 15 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

labrum, and she was instructed to have her records sent from Harborview.

87. She did this, then called back to schedule, and she was informed that the records had been received, but that she would not be seeing Dr. Cara Beth Lee (who does labral tear repairs), but that she would need to see Dr. Keith Mayo, the Director. His earliest appointment would be on November 28, 2018.

88. At this time, the Feis' did not know that Dr. Mayo does not do labral tear repairs. They learned this in 2021 from doctors at Harborview.

89. Ms. Feis progressed to using a wheelchair for any longer distances and using a walker at home.

90. August 17, 2018, she had to stop working, as the pain worsened and became unbearable. It was discovered in 2019 that the tear was continuing to worsen.

91. September 29, 2018, Ms. Feis woke up with back pain that had never been present and Mr. Feis drove her to Harborview.

92. Harborview performed extensive testing, including a CT of her Lumbar spine and her pelvis, including the hardware.

93. The hardware was perfectly aligned, and there were no issues found with it.

94. It was deemed a sprain/strain, and Ms. Feis began physical therapy, massage, acupuncture, and chiropractic care.

95. The spine pain was resolved in a short amount of time, but the left hip continued to worsen although Ms. Feis was in all of these treatments.

96. November 28, 2018, Dr. Mayo examined Ms. Feis in person and immediately stated he needed to remove the sacrum hardware.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 16 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

97. Dr. Mayo completely disregarded the labral tear and cartilage loss that had been previously diagnosed, and he too had clearly not looked at the imaging or chart notes provided by Harborview, as he never mentioned femoral impingement.

98. Mr. and Ms. Feis both objected to the removal of the hardware and told Dr. Mayo and Kenda Bulley, both who were present for the appointment, that they had been told by the doctors in Vermont, as well as Dr. Sagi never to remove the sacrum hardware, and that it had just been imaged at Harborview and it was perfect.

99. Dr. Mayo stated, "you didn't need that after 8 weeks". He did not base this on any imaging or diagnostic tests. It was simply an opinion.

100. Dr. Mayo ordered a pain injection for diagnostic purposes that gave Ms. Feis almost complete relief for almost a week. This was actually an indicator that the labral tear should have been repaired.

101. Dr. Mayo never gave a reason for removing the hardware other than "ruling it out," and he refused to order imaging, although it was requested several times.

102. Ms. Feis never said she had spine pain, and spine pain was never in her chart notes from 2016 through even this November 28 visit with Dr. Mayo.

103. A labral tear radiates pain into the groin, hip and buttock, and Ms. Feis said she had pain in these areas in both hips. It would later be discovered that she has femoral impingement, and this affects both hips.

104. Dr. Mayo continued to disregard the objections, imaging was ordered for the right hip by Kenda Bulley, then canceled. Dr. Mayo and Kenda stated they could not

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 17 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

"get good imaging with hardware in".

105. He did not look at the imaging done a few months prior, that had correctly diagnosed a labral tear with full cartilage loss.

106. He disregarded the diagnosis, knowing that this diagnosis had been made, he does not perform this type of repair, and yet he insisted on him seeing and treating Ms. Feis vs. Dr. Cara Beth Lee, the surgeon on his team that does do these repairs.

107. Dr. Mayo incorrectly diagnosed Ms. Feis with complex regional pain syndrome and painful hardware, he ordered an EMG test and ordered her to go to Pain Management, possibly for a spinal cord stimulator, which only addresses nerve pain, not any mechanical issues such as a torn labrum or a birth defect.

108. Surgery to remove the sacrum hardware was initially scheduled for January 18, 2018, with pre-OP on January 15, 2018, but Dr. Mayo attended a conference, and the surgery was moved to January 31, 2018.

109. December 20, 2018, Ms. Feis saw Dr. Jon Geffen for the EMG test, which showed minor nerve issues (numbness in the legs remaining from the crush injuries from the accident), but nothing that interfered with daily life, required treatment or further testing.

110. December 20, 2018, Ms. Feis also saw Dr. Xi Tian, Pain Management Specialist at Washington Center for Pain Management.

111. A spinal cord stimulator, a pain pump and other options were discussed as last resorts after all mechanical issues had been addressed. He was adamant that the hip needed to be repaired before he would do anything because a SCS only works on

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 18 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

nerve pain, and likely would not address the pain Ms. Feis was having.

112. Dr. Tian stated that if the surgery were not scheduled so soon, he would stop it. He saw absolutely no reason for it as there were no spine symptoms. The symptoms clearly were in line with the labral tear diagnosis.

113. Everyone was under the assumption that once Dr. Mayo had "ruled out" the painful hardware (that wasn't painful and had no issues), that he would finally repair the already diagnosed issue, the labral tear and torn cartilage. This was never his intent.

114. January 15, 2019, during the pre-OP appointment with Kenda Bulley stated Ms. Feis would stay 1 or 2 nights in the hospital to work with physical therapy.

115. The Feis' booked and stayed in a hotel January 30th to be close to the hospital for an exceedingly early check in.

116. January 31, 2019, as the nurse was preparing Ms. Feis for surgery, she offered Mr. Feis to stay the night in the room, and he declined, stating all of his things were at the hotel they had booked, and he also kept Ms. Feis' wheelchair and all possessions with him during surgery. Neither Mr. or Ms. Feis or a possession ever saw a patient room at Swedish while admitted for this surgery.

117. While anesthesia was speaking with Mr. and Mrs. Feis, Kenda Bulley came into the room, then Dr. Mayo came into the room, and said "well folks, we may be at this 8 hours and we may not get it out because I don't know what tools to use" the room was silent and Dr. Mayo looked at Kenda Bulley and said "we didn't get the OP report from Vermont did we?".

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 19 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

118.  Kenda Bulley shook her head no.

119.  At this point, Ms. Feis asked why no one had mentioned needing the report because we had it at home. We told them Dr. Sagi had it sent to him a month before the surgery and had said specific tools were used for distinct types of hardware.

120.  We also said that Dr. Sagi had called Dr. Bartlett to review the images and OP report the week of my surgery.

121.  At that point, Dr. Mayo said "Well, I know Bartlett too. I will call him."

122.  Ms. Feis was taken to the OR, and just before she was put under anesthesia, Dr. Mayo said, "I talked to Bartlett and I know what to use".

123.  The surgery was short, and after a short stay in the recovery room, Ms. Feis was instructed to walk to the restroom using the walker.

124.  When she returned, she was told she was being discharged to go home. Kenda Bulley was asked about this abrupt change, and she stated, "insurance doesn't consider hardware removal to be an inpatient surgery".

125.  Mr. Feis had to park the car with Ms. Feis in it, fresh out of the OR, still groggy, and run into the hotel to gather their things.

126.  When Ms. Feis requested and received her records a few months later to dispute the billing, she discovered a pre-approval for 2 nights of inpatient stay that Kenda Bulley had obtained before the surgery.

127.  Because Swedish charged for an inpatient surgery and a room that was never seen or occupied by even a possession, Ms. Feis called and wrote to Swedish several times in an attempt to correct the billing, and finally filed a fraud complaint with

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 20 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

the insurance carrier.

128. She wrote "Swedish Medical Center incorrectly billed myself as well as my insurance carrier, and in response to my dispute via telephone, I received the attached letter stating that my insurance carrier authorized and paid this at the higher INPATIENT service, based on what my physician ordered.

129. I made it clear during the call that neither myself, my spouse, or any of my belongings ever saw a room at Swedish.  We were told the day before surgery, which was January 31, 2019, that I would be staying overnight.

130.  However, I was released from the OUTPATIENT area, and this should have been billed and paid as an OUTPATIENT service.  A copy of the OP report for this surgery is attached, and it CLEARLY states that I was discharged shortly after surgery from the OUTPATIENT area."

131.  Ms. Feis had increased pain in her hip and buttock (the same incision was used through the hip), and now she had new pain in her spine. She had been in bed, but on the day of her post-OP appointment, when she came downstairs to leave, she fell and caught herself on the kitchen island. Her left leg gave out from under her.

132.  Her physical therapist, Lauren Chapelle documented the fall and the bruising on Ms. Feis' hand the next day when Ms. Feis went to physical therapy.

133.  February 19, 2019, during the post-OP appointment with Kenda Bulley, Ms. Feis told her of the increased pain, the new pain, and reported the falling.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 21 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

134.  Kenda Bulley kept repeating "we will see you in May," and an appointment was scheduled for May 14, 2019. She completely ignored the complaints of the pain and falling and wrote in the chart notes the pain had improved. She did document "patient reports a fall".

135.  Because of the increased pain, and the pre-approval from insurance to do a trial of a spinal cord stimulator, Dr. Tian ordered imaging.

136.  Dr. Tian would not do any work on Ms. Feis' spine without this imaging, and since Dr. Mayo refused to order imaging of the pelvis, Dr. Tian ordered it so that it could be done at the same time.

137.  He ordered the testing to be done at Centers for Diagnostic Imaging (CDI), one of the largest imaging providers in the US.

138.  The imaging included a MRI with and without contrast, a CT, also with and without contrast and a Myelogram.

139.  The imaging showed the original fracture from the accident open, and it showed a second fracture that at some point healed on its own because it didn't show up on later imaging (it was apparently a fracture from the surgery).

140.  When the hardware was removed from Ms. Feis' pelvis in 2016, bony ossifications formed. These did not interfere with her daily life, and she was told they were normal.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 22 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

141. When the Myelogram was done, because the spinal fluid sac is punctured, it was important to immediately lay flat for 24 hours so that spinal fluid would not leak, however, the radiologist was alarmed at what he saw, and he pulled Mr. and Mrs. Feis into a room and showed them the image of Ms. Feis' L5.

142. Bony ossification was growing out of the freshly opened fracture that the hardware had been holding together, and it was wrapped around L5.

143. The removal of the sacrum hardware caused Ms. Feis' pelvic ring to become unstable, and she had to use a walker or wheelchair to ambulate.

144. March 26, 2019, Mr., and Ms. Feis took imaging that had been ordered by Dr. Tian that showed open fractures, that were caused by Dr. Mayo during an unnecessary hardware removal surgery performed January 31, 2019, for which he failed to adequately prepare, and for which he did no diagnostic imaging.

145. When an appointment was scheduled March 26, 2019, and Mr. and Ms. Feis brought the CD with imaging ordered by Dr. Tian, Dr. Mayo became indignant asking who Dr. Tian thought he was, and he was reminded that he was the pain specialist expected to do a spinal cord stimulator trial because Dr. Mayo had incorrectly diagnosed her with complex regional pain syndrome.

146. No other doctor ever validated or supported this, but all said to fix the mechanical issues in the hip, then after the hardware was removed the sacrum.

147. During the March 26, 2019, appointment, although the images and reports were provided, along with the chart notes with a request for corrections due to the many

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 23 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

errors that had been made.

148.  Dr. Mayo denied the presence of ANY fractures stating loudly "you do NOT have ANY fractures".

149.  He ignored the myelogram imaging that showed the bone ossifications growing around L5, was fumbling around trying to look at images, and appeared to be looking at imaging sent from Harborview before the initial appointment.

150.  He could not find the image with the fractures, although the Feis' had waited a substantial amount of time for the appointment while the images were uploaded into their system from a CD they brought from CDI. He said he "did not have time to load and look at all of that".

151.  Dr. Mayo was reminded that the Feis' had told him they had been advised by two physicians to never remove the hardware. His response was "Sagi and I have not seen eye to eye to eye before", and he stated that Harborview and CDI did not know how to order or do proper imaging "sequencing", and that he would order imaging.

152.  During this visit he said that Ms. Feis could not have a pain injection because of risk of infection and an impending hip replacement, and then he ordered an arthrogram, telling Kenda Bulley to get it worked in for the following week, ASAP.

153.  This contradicts itself, as the arthrogram requires an injection of dye for the diagnosis, and pain medication can be administered at the same time.

154.  Ms. Feis was told that she needed a hip replacement.

155.  Another incorrect diagnosis made without imaging substantiating the diagnosis or any other reason for the change other than increased pain and disability.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 24 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

156. Ms. Feis saw Dr. Barrett at Proliance Renton (not named as a Defendant), who is known as a hip replacement expert on 5/24/2019, and he verified, that Ms. Feis did not need a hip replacement, but that she needed her sacrum fracture addressed.

157. When Ms. Feis asked him if she could see the hip preservation specialist, the request was denied.

158. Dr. Solomon in their office specializes in arthroscopic hip repairs and could have repaired Ms. Feis' hip and saved her another 6 months of pain.

159. The request for mediation letter dated August 20th, but that was not sent via certified mail until September 1, 2021 to Dr. Mayo, and several Swedish addresses provided by an attorney reviewing the case outlines:

160. (a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;

161. Had Ms. Feis been aware that there was a possibility that the sacrum fracture had not healed, she would never have proceeded with the surgery to simply "rule out" painful hardware.

162. The Feis' had already objected to the surgery, and only agreed so that the labral tear could be repaired. Dr. Mayo stated that the hardware had not been needed "8 weeks after the accident", however, he did not do imaging to confirm that the fracture had healed.

163. Had Ms. Feis been aware that Dr. Mayo did not perform labral tear repairs, and that she should not have been in his care, she would have gone to a different doctor.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 25 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

164. Mr. and Ms. Feis assumed that after Dr. Mayo was satisfied that the hardware was not the issue, that he would repair the labral tear.

165. Had Ms. Feis remained in the care of Dr. Mayo, she would have lost a viable hip joint at the age of 47.

166. Had Dr. Mayo done proper imaging before the surgery, or even after the surgery, he would have seen the open fracture. The 2 small screws that were in place at that time are insignificant in comparison to the hardware in place now, and imaging was recently done at Cleveland Clinic after the surgery was done to repair and mitigate the damage done by the Defendants.

167. The fracture line was visible to the naked eye when imaging was done in 2021, after an invasive spine surgery that would never have been necessary had Dr. Mayo not removed the sacrum hardware.

168. Now, 3 very invasive, life altering, unnecessary surgeries have been performed, and a needed right hip repair has been delayed almost 5 years. Ms. Feis was just cleared by her surgeon on March 13, 2023 to have her right hip repaired after having been cleared by the specialty wound clinic on March 2nd.

169. Ms. Feis endured a painful and invasive surgery with an almost 6" incision that did not heal properly. This surgery would never have been needed had the small screws been left intact.

170. The hip tear continued to worsen while Ms. Feis began seeing Dr. Richard Wohns for a spine diagnosis.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 26 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

171. Dr. Wohns ordered several injections, then ordered a discogram of several discs, and Dr. Tian intervened because no disc symptoms were present, the testing compromises the discs, and it is a very painful test.

172. During one of the diagnostic injections (one of many conducted April – August 2019), the pain specialist at Dr. Wohn's office, Dr. Wang, asked me who would treat my hip. I said I didn't have anyone, and that I had been searching. She personally referred Ms. Feis to Dr. James Bruckner at Proliance Issaquah.

173. On October 18, 2019, Ms. Feis saw Dr. Bruckner at the Proliance facility.

174. He had thoroughly reviewed all images and chart notes sent to him, and immediately pointed out the femoral impingement. Extra bone on the back of Ms. Feis femur. He said this was a birth defect that could have caused the labral tear and cartilage loss at any point from Ms. Feis' teen years until present.

175. It is common, and it is usually present in both hips, explaining the pain in Ms. Feis' right hip.

176. Since Ms. Feis at this point was mostly ambulating in a wheelchair, a new arthrogram was expedited. Dr. Bruckner suspected additional damage since more than a year had passed from the last imaging.

177. On 10/23/2019, the expedited MRI showed a significant amount of additional damage to Ms. Feis' left hip.

178. The tear had grown from 1 cm. to "from 12 o'clock to 3 o'clock"

179. Dr. Brucker's team expedited a surgery date, and on November 7, 2019, Dr. Bruckner repaired Ms. Feis' left hip.

180.  He sent her home with still photos as well as a video of the surgery, and it was evident where the extra bone was. He pointed it out on the video.

181.  Ms. Feis was up and walking without hip pain the next day, however, the low back pain and leg buckling remained.

182.  The recovery from the hip surgery was very quick, no complications, and Dr. Bruckner said he would fix the right hip and remove the extra bone so that it would not have the same labral tear issue as soon as the left side was stable, and the sacrum had been addressed.

183.  Unfortunately, the sacrum was not repaired, but was made worse, and Dr. Bruckner was not able to repair the right hip before the Feis' moved to Ohio.

## FACTS DR. CHRISTOPHER BOONE – PROLIANCE ORTHOPAEDICS DEVIATION FROM STANDARD OF CARE

184.  Dr. Boone is an orthopedic specialist, falling into the category of "health care provider" per RCW 7.70.020.

185.  Proliance Orthopaedics & Sports Medicine is an independently owned and operated franchise, "a premier group of Orthopaedic surgeons with locations in Bellevue, Issaquah, and Redmond that specialize in the diagnosis, treatment, and rehabilitation of general Orthopaedic conditions and sports injuries, in addition to conditions requiring more specialty-focused care" per their website at the time of the filing of this lawsuit.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 28 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

186. Proliance Orthopaedics & Sports Medicine falls within the category of "health care provider" per RCW 7.70.020.

187. Proliance Orthopaedics & Sports Medicine falls within the category of "health care provider" per RCW 7.70.020.

188. On December 05, 2019, Ms. Feis saw Dr. Boone in his office at Proliance, and he stated in his chart notes that he felt the pain Ms. Feis was experiencing was from the unfused sacrum fracture, however, he diagnosed her with "Hip pain left SI joint". Mr. and Ms. Feis never heard the term SI joint and assumed it was the sacrum because that was the only reason for the visit. At this time, they did not have the chart notes, and had no idea there was a diagnosis or anything planned other than a sacrum fracture repair.

189. He suggested a joint procedure with Dr. Ashit Patel, the spine specialist in the same Proliance group.

190. He suggested that Dr. Patel decompress L5, and he, Dr. Boone would repair the sacrum fracture. No mention of SI joint hardware was made.

191. On December 16, 2019, Mr. and Ms. Feis saw Dr. Patel at the Proliance office.

192. He took a conservative approach, stating he felt it would be more invasive to remove a small ossification than to repair the sacrum, stop the growth.

193. He said they should have the sacrum repaired and see how things were afterwards.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 29 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

194. He references the Lumbar spine MRI with contrast performed at CDI on 03/12/2019, and a Lumbar Spine CT with Contrast done 04/10/2019, which showed "prominent deformity seen involving sacrum on the left side. This appears at least partially healed" "Left L5-S1 facet is markedly degenerated and rotated with gaseous changes" "Left subarticular recess is narrow and left nerve root canal is narrow L5-S1 due to deformity from previous fracture" "SI joints show degenerative changes bilaterally without evidence for fusion".

195. This was the first spine diagnosis. The bone mass growing from the opened fracture that was being "aggravated" and pushed against by the iFuse hardware Dr. Boone implanted was causing the excessive bone growth.

196. On December 26, 2019, Dr. Boone had a follow up appointment after the visit with Dr. Patel, and this was also a pre-OP appointment.

197. Dr. Boone discussed with Mr. and Ms. Feis how he would put hardware in across the midline of the sacrum. He showed a line on the image on his screen.

198. The Feis' assumed similar hardware to what had been removed by Dr. Mayo, and nothing about an iFuse, or anything specific was mentioned.

199. The iFuse was the incorrect hardware, not the hardware discussed during pre-OP, which would reach the mid-point of the sacrum to fuse the fracture, and it had trapped the root nerves.

200. The iFuse was not only the wrong hardware, but it was implanted incorrectly by Dr. Boone then the large incision was carelessly stapled shut with the end puckered.

201. This area got infected, and the medical assistant was sent a photo.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

PAGE 30 OF 41

202. Prior to an iFuse surgery, there is a significant amount of patient information and literature that should be reviewed by the surgeon with the patient to prepare them.

203. Ms. Feis was never told she would be having an iFuse implanted and did not know the difference between a SI joint and a S1, which is the sacrum until after the surgery when she started researching the information on the OP report.

204. The first risk was increased sacrum pain. Had Ms. Feis known this, she never would have consented to having this hardware implanted.

205. The entire reason for seeing Dr. Boone was to have her sacrum repaired and the goal was to be out of pain so that she could then have the right hip repaired and return to work and normal life.

206. The hardware is exceptionally large. It has been said it is the size of 3 men's fingers. The "cages" or "plugs" as the Cleveland Clinic doctors call them are triangular, hollow and they are designed for bone to grow into them.

207. Unfortunately, Dr. Boone inserted them just along and not through the fracture line, so that the friction caused immense pain that is present to this day, and likely will remain present, as it was never there before the iFuse.

208. The surgery was an outpatient surgery, and Ms. Feis went home the same day.

209. The next morning, the Medical Assistant, Carolyn called to check on Ms. Feis, and Ms. Feis told her that her pain was not controlled.

210. Carolyn reached out to the Physician's assistant that was in the operating room, and she said that a significant amount of bone work had been done, and she prescribed Dilaudid in addition to the Oxycontin that Ms. Feis had already been

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 31 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

prescribed.

211. Ms. Feis had to be seen by Dr. Fisk at the Acute Pain Management clinic in Bellevue on 01/24/2020, 8 days after the surgery performed by Dr. Boone.

212. Pain was not controlled, and a regional nerve block was performed. Ms. Feis was sent home with a catheter in her spine until 01/29/2020.

213. Pain management was eventually switched to this clinic to the chronic pain providers Dr. Julian and Hannah NG, ARNP. They continued to provide her with pain management throughout her surgery with Dr. Patel in 2022, and a few months after her move, while Ms. Feis faced difficulties finding a provider that would accept her with the high opioid dose she was on.

214. A couple of weeks after surgery, Ms. Feis was still having bladder trouble. Incontinence and she had to push in order to void. She reached out to a friend that is a Neurological Nurse and asked if she should still be having issues that far out. She was told to call the surgical team immediately which she did.

215. When Ms. Feis told the medical assistant that the catheter had caused issues, she was informed that because the surgery was so short, no catheter had been used.

216. Ms. Feis was sent to Urgent Care to rule out a bladder infection. The doctor there said he suspected nerve damage around the L5 region.

217. Ms. Feis was referred to a Urologist, Lucas Scott who she saw on 03/12/2020 for the first time.

218. He ordered a Urodynamic study, and prescribed Flomax to help with voiding.

219. The urodynamic study performed on that showed bladder issues pointing to nerve

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 32 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

damage in the sacrum.

220. After all the issues with pain and bladders dysfunction, and Dr. Boone stating "but your SI joints look great", and Ms. Ms. Feis obtained the OP report to see what hardware had been used.

221. It was discovered that an iFuse system had been implanted, and Ms. Feis began researching about the device and realized it was entirely wrong.

222. Dr. Patel saw Ms. Feis in June 2020, and ordered a diagnostic injection which was performed by Dr. Julian. Dr. Julian saw a mass on the fluoroscope and said it was not safe to inject from the left side, and she had to inject right to left. This was later confirmed as the bony mass growing from the fracture.

223. Per the Neurological testing and MRI testing done by the Neurologist that Dr. Patel referred Ms. Feis to, Dr. Fosmire at Overlake Medical Center in Bellevue (not a Defendant), the root nerves of S1, S2, S3 and L5 were trapped.

224. It could be seen on imaging that the right side of the sacrum had healthy root nerves coming out of it, and in contrast, the left side was a dark mass.

225. The nerves were crushed by bone ossifications, and an incorrect hardware device called an iFuse, which is not endorsed by most hospitals, and per Professor Bransford at UW, who Ms. Feis saw in 2021 for diagnostic testing, "is the only piece of orthopedic hardware created solely for profit".

226. After testing by a Neurologist, Dr. Fosmire, a 2/2/2021 surgery was performed.

227. Bilateral L5-S1 laminectomies, S1 osteotomy, complete left S1 facetectomy, L5-S1 posterior spinal fusion w/instrumentation.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 33 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

228.  This surgery was necessary to release trapped root nerves (per Dr. Patel, the S1 root nerve was "flat as a ribbon").

229. Dr. Ashit Patel and Dr. Alexander Arzeno (neither named as Defendants) performed this 6.5-hour surgery on 2/2/2021, and afterwards, Dr. Patel, who is also one of the few certified iFuse experts listed on their website for the area, stated more than once that the fracture was not fused, it was not aligned and it was causing the bone ossifications to grow.

230. Dr. Patel prepared Ms. Feis well for the surgery, and instead of having a physician's assistant assist, he had an EMG team and another spine surgeon assist.

231.  He said without a sacrum repair, he could not guarantee that the bone removal he had just done would not return.

232.  Bladder function returned for 2 weeks, then became the same as it was prior to surgery. Incontinence and the need to push in order to void were back to where they were before the surgery.

233. Per Dr. Cereijo at Cleveland Clinic, he failed to debride the area where the hardware was being inserted, and one pieces is suspected to be in the foramen.

234.  Ms. Feis consented to the treatment without being aware of or fully informed of such material fact or facts.

235.  Ms. Feis had no idea that there was a risk of the incorrect hardware being used, or that her root nerves could be crushed. The name of the hardware was never mentioned and no literature or information was provided.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 34 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

236. Had Ms. Feis been aware of the hardware Dr. Boone intended to use, and the possible risks involved with it, she never would have consented to the surgery.

237. During a phone call 04/05/2021, Ms. Feis told Dr. Boone again that her pain was not managed, and now she was bedridden without proper bladder function again.

238. Every appointment he said "you will improve month over month, not week over week".

239. During this call, Ms. Feis told him that she had asked her husband to take her to Oregon for Dr. assisted suicide. He completely disregarded this, and said "I will prescribe you steroids that you will take for a few days and you will be better". He said "I can take them out, but you know where that got you the first time". During the first visit with Dr. Patel he had stated had the hardware never been removed by Dr. Mayo "you wouldn't be sitting there". The two were vastly different. One opened the fracture, and the other continuously aggravated it.

240. Ms. Feis was in contact with Dr. Sagi and had planned to go to, or even move to Cincinnati to have him repair the damage. He refused to touch the iFuse, then made a misstatement to Ms. Feis potential attorney, telling her he would have removed the sacrum hardware. He was the one that had specifically said never to remove it.

241. Dr. Sagi, Dr. Firoozabadi, Dr. Mayo, Dr. Barrett and others are UW Alumni.

242. Dr. Firoozabadi had no issues with the sacrum fracture but refused to touch the iFuse hardware.

243. During this time, Ms. Feis saw Professor Bransford at the spine clinic at UW. He ordered a SPECT nuclear medicine scan that showed the fracture to be open.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 35 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

244. Dr. Sagi said he disagreed with that diagnosis and had clearly not looked at any of the images from CDI or UW that were sent to him on CD's.

245. He said to go back to Dr. Boone and ask him what he would do.

246. On August 2, 2021, Mr. and Ms. Feis saw Dr. Boone in the office, and he allowed the visit to be recorded by Mr. Feis. He asked that it be uploaded to MyChart, but this never worked.

247. During this conversation, Ms. Feis asked him if he would remove the hardware, and he said, "well they make tools to remove them." She reminded him of their conversation where he had told her he would take them out. And she asked him if he felt it were acceptable to ignore a patient so desperate that they wanted to have Dr. assisted suicide.

248. Mr. Feis said several times "you did the wrong procedure on my wife". Dr. Boone never objected and said he did not, he simply was quiet and looked down.

249. He kept saying "well, you love and respect Dr. Sagi, and he said the fracture is healed, so can't we all just agree on that?". Mr. and Ms. Feis said no, there was recent SPECT imaging that showed the fracture open, and his colleague Dr. Patel, who had Ms. Feis open on an OR table for 6.5 hours was adamant that the fracture was misaligned and not fused.

250. Ms. Feis mentioned that she had found one successful removal that had been done by a doctor in Denver. Dr. Boone asked that she send that information to him, and she informed him that she was moving to Cincinnati so that Dr. Sagi could coordinate her care.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 36 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

251.  After the call with her intended attorney in September, Ms. Feis never contacted Dr. Sagi again, but intends to file a formal grievance with the Medical Board in Ohio now that she has had surgery that proved the fracture was not fused.

252.  December 7, 2022, it was finally repaired by Dr. Robert Douglas Orr at Cleveland Clinic. This was done as a team effort with the treating orthopedic traumatologist on call the day of surgery at the Main Campus where the surgery was performed.

253.  Dr. Orr implanted very large hardware and stabilized the fracture as well as the hardware placed incorrectly by Dr. Boone.

254.  This surgery was not performed until Cleveland Clinic had done its own extensive testing.

255.  Ms. Feis intentionally arrived at the first appointments with no imaging or documentation, as she wanted an unbiased second opinion.

256.  Per Dr. Cereijo, orthopedic traumatologist, this is exactly what many patients do, and even when patients arrive with external records, Cleveland Clinic performs extensive testing of their own, via several teams (in this case the orthopedic traumatologist, Dr. Cereijo, who ordered imaging, Dr. Reddy from the spine and neurology department, who referred Ms. Feis to the spine surgical department where she was in the care of one of the top surgeons in the Nation, Dr. Robert Douglas Orr. His reputation is for "taking on the worst of the worst cases and fixing them".

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 37 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

257. After the 3-hour surgery, on day 3, Ms. Feis was able to stand on her own two feet, holding a walker for safety, and she was able to urinate without the pushing and waiting.

258. Ms. Feis no longer uses any assistive devices for support, and can walk on her own, however with a significant amount of pain.

259. Dr. Orr said the hardware he inserted could be evaluated at the 1-year mark, and not sooner, and testing would be done to ensure everything had appropriately healed before anything would be touched.

260. Ms. Feis still has intermittent bladder issues, that may or may not ever resolve.

261. Per Dr. Orr the bladder nerve had been damaged then was constantly irritated for a very long time by the movement of the pelvis and the iFuse hardware across it.

262. The iFuse hardware has been stabilized, however, there is always a risk with hardware that it can break, become infected and need to be removed.

263. Dr. Cereijo at Cleveland Clinic stated in his chart notes that he did not want to "make the same mistakes that others had made". And, he stated in his notes that the likelihood of bleeding out due to the pelvis being vascular would be great, and one of the pieces is suspected to be in the foramen and therefore cannot be repaired with cement and donor bone.

264. Dr. Orr said unless there is a significant reason to move or remove any of the iFuse pieces, it is best to leave them in place. His chart notes specifically state that the iFuse was the incorrect, insufficient hardware, and that it had "aggravated" the fracture.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 38 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

265. The diagnosis for the December 7, 2022 surgery was "Nonunion of zone 2 sacral fracture".

266. It was a painful surgery, with a long recovery due to an incision complication.

267. Dr. Orr noted in his chart notes that not only did the iFuse hardware not serve the purpose for the surgery, which was to fuse the sacrum fracture, but that it also aggravated the fracture.

268. Dr. Patel had stated this before the 2021 surgery and said the fracture constantly moving was causing the bony growth that was causing the bladder incontinence and inability to void.

269. Dr. Patel told the Feis' that he had to consult with several physicians before the surgery, and he said this included Dr. Boone, whom he showed the fracture to. Dr. Boone had no recollection of this conversation when asked about it.

270. Mr. and Mrs. Feis had visited Dr. Patel at his office on 06/04/2021, and he allowed the appointment to be recorded.

271. During this appointment he reassured Mr. and Mrs. Feis that L4 was not sliding down over L5, which is what the imaging had shown at UW.

272. Dr. Patel is a certified iFuse specialist. There are not many in the area that he practices in. Dr. Boone is another. Dr. Patel during this appointment when Ms. Feis said, "Dr. Patel, I have the wrong hardware in my pelvis", his response was "I cannot disagree".

.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 39 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

## PRAYER FOR RELIEF

273. The Defendants, Mr. and Ms. Feis respectfully request summary judgment for damages against the Plaintiffs, each of them to compensate for the immeasurable amount of pain and suffering caused by their negligence and deviation from the acceptable standard of care.

274. This malpractice has caused Ms. Feis tremendous physical, emotional, and financial pain.

275. Ms. Feis now has had 4 unnecessary, invasive spine surgeries, the latest with very large hardware and complications.

276. Most of Ms. Feis L5 had to be removed, root nerves at S2 and S3 remain blocked by bony ossifications. They are not impacting daily life at the present, but this could change if they grow.

277. Ms. Feis is left with an iFuse device that cannot be removed without risk of death.

278. The iFuse device will continue to cause pain for the rest of Ms. Feis' life.

279. The iFuse could break or become infected in the future. This puts Ms. Feis' life at risk and will be a source of anxiety for Mr. and Ms. Feis the rest of their lives.

280. Ms. Feis has had to wait almost 5 years to have her right hip fixed because the left hip and sacrum had to be stable before the right could be repaired (the extra bone shaved off, so it does not shred the labrum and cartilage. A tear is suspected).

281. Had she been properly diagnosed with Femoral impingement in 2018, both hips could have been arthroscopically repaired, and she would have been back to work, at a job that she loved in a matter of weeks. Instead, she lost this job.

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 40 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM

282. Mr. Feis has suffered the loss of consortium and a helpmate, he has been the sole caregiver of Ms. Feis while working full-time to provide, as Ms. Feis' disability caused the household to lose a 6-figure income.

283. The Feis' had to leave a home in Washington that they were settled into, they loved, and they endured an expensive move cross-country in order to get the medical care Ms. Feis needed.

284. That the Plaintiffs be ordered to compensate Mr. and Mrs. Feis in the amount of $18,000.000.00 for pain and suffering, loss of income, moving expenses, medical expenses, future medical expenses, reasonable attorney's fees, and any other amounts for punitive and any other damages deemed reasonable by a judge or jury.

Respectfully submitted,

DATED: March 27, 2023          s/ Lisa Gustafson Feis
                               s/ Julien Feis
                               Lisa Gustafson Feis
                               & Julien Feis, pro se
                               8248 State Route 135
                               Lynchburg, OH 45142
                               (206) 427-5569
                               info@feis-consulting.com

PLAINTIFF'S COMPLAINT FOR DECLARATORY
RELIEF AND DEMAND FOR JURY

PAGE 41 OF 41

LISA GUSTAFSON FEIS & JULIEN FEIS
8248 STATE ROUTE 135
LYNCHBURG, OH 45142
(206) 427-5569
INFO@FEIS-CONSULTING.COM